UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-21736-ALTMAN/Sanchez

EDWARD FOSTER,

Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.,

Defendant.

_____/

## OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Our Plaintiff, Edward Foster, was a passenger aboard the *Grandeur of the Seas*, a cruise ship operated by our Defendant, Royal Caribbean. *See* Joint Statement of Undisputed Facts ("JSUF") [ECF No. 68] ¶ 1. On May 7, 2023, the second day of the cruise, as Foster was participating in the World's Sexiest Man competition on the pool deck of the ship, he sustained burns to his feet. *See id.* ¶¶ 4–5. Foster sued Royal Caribbean, asserting three negligence claims and demanding punitive damages. *See generally* Complaint [ECF No. 1].

Both parties now move for summary judgment. Royal Caribbean says that it's entitled to summary judgment on all counts because the hot pool deck was an "open and obvious" hazard. *See generally* Defendant's Motion for Summary Judgment (the "Defendant's MSJ" or "Def. MSJ") [ECF No. 70].[1] Royal Caribbean adds that Foster hasn't introduced evidence to support his vicarious-liability claim *or* to establish his entitlement to punitive damages. *Ibid.* Foster counters that he's entitled to partial summary judgment on the issue of constructive notice. *See generally* Plaintiff's Motion for Partial

---

[1] The Defendant's MSJ has been fully briefed and is ripe for adjudication. *See* Plaintiff's Response to Defendant's MSJ ("Pl. Response") [ECF No. 77]; Defendant's Reply in Support of MSJ ("Def. Reply") [ECF No. 83].

Summary Judgment (the "Plaintiff's MSJ" or "Pl. MSJ") [ECF No. 65] at 1.[2] After careful review, we **GRANT in part and DENY in part** Royal Caribbean's MSJ and **GRANT** Foster's MSJ.

### THE FACTS

On May 7, 2023, Foster participated in Royal Caribbean's "World's Sexiest Man" competition on the main pool deck of the *Grandeur of the Seas*. *See* Defendant's Statement of Material Facts ("DSMF") [ECF No. 69] ¶ 11; *see also* Plaintiff's Statement of Material Facts in Opposition to DSMF ("DSMF Response") [ECF No. 76] ¶ 11("Undisputed."). This competition involved several male passengers performing for three female judges—one at a time. *See* DSMF ¶ 19; *see also* DSMF Response ¶ 19 ("Undisputed."). Foster, who was the "third-to-last to perform," came on only after his predecessor had "poured beer on himself and the pool deck" as part of his performance. DSMF ¶¶ 23–24; *see also* DSMF Response ¶¶ 23–24 (as to each paragraph, "[u]ndisputed"). Because he believed that he was more likely to slip on the beer if he kept his sandals on, Foster removed his footwear "as soon as he saw the man pour the beer." DSMF ¶¶ 25–27; *see also* DSMF Response ¶¶ 25–27 (as to each paragraph, "[u]ndisputed.").

During the competition, Foster got "onto his hands and knees to perform in front of the first judge." DSMF ¶ 31; *see also* DSMF Response ¶ 31 ("Undisputed."). While performing for each of the three judges, Foster felt that the deck was hot and that the heat was "uncomfortable." DSMF ¶¶ 32–39; *see also* DSMF Response ¶¶ 32–39 (as to each paragraph, "[u]ndisputed"). Each of Foster's first two performances lasted between thirty and sixty seconds. *See* DSMF ¶¶ 33, 38; *see also* DSMF Response ¶¶ 33, 38 (as to each paragraph, "[u]ndisputed"). Despite feeling the heat from the deck, Foster didn't stop performing because his "thought process was, 'could I get burnt? No, I couldn't

---

[2] The Plaintiff's MSJ has been fully briefed and is likewise ripe for adjudication. *See* Defendant's Response to Plaintiff's MSJ ("Def. Response") [ECF No. 79]; Plaintiff's Reply in Support of MSJ ("Pl. Reply") [ECF No. 82].

get burnt. I'm on a Royal Caribbean ship.' . . . I was under the belief that I was in a safe environment."
DSMF ¶ 37 (quoting Deposition of Edward Foster ("Foster Depo.") [ECF No. 69-1] at 68:5–15); *see
also* DSMF Response ¶ 37 ("Undisputed."). Foster's third performance lasted at least twenty-four
seconds before he "had to leave the pool deck because it was so hot." DSMF ¶¶ 42–43 (quoting Foster
Depo. at 70:17–21); *see also* DSMF Response ¶¶ 42–43 (as to each paragraph, "[u]ndisputed"). "By the
time he reached the shade, Foster felt 'excruciating pain' in both of his feet, and saw that the skin had
peeled away from the bottom of his right foot." DSMF ¶ 44 (quoting Foster Depo. at 71:2–21); *see
also* DSMF Response ¶ 44 ("Undisputed."). "Mr. Foster was diagnosed with second degree burns on
his feet[.]" Plaintiff's Amended Statement of Material Facts ("PSMF") [ECF No. 64] ¶ 7; *see also*
Defendant's Statement of Material Facts in Opposition to PSMF ("PSMF Response") [ECF No. 78]
¶ 7 ("Undisputed that Plaintiff was diagnosed with second-degree burns to the bottoms of his feet.").
"Prior to the subject cruise, Foster had normal sensation in both of his feet." DSMF ¶ 28; *see also*
DSMF Response ¶ 28 ("Undisputed.").

Foster contends that, because of the ship's "unreasonably hot pool deck," he "sustained severe
burns on both of his feet which required medical treatment and will require additional treatment into
the future." Complaint ¶¶ 17–19. Foster thus asserts three negligence claims against Royal Caribbean:
Vicarious Liability (Count I); Negligent Failure to Warn (Count II); and General Negligence (Count
III). *See id.* ¶¶ 18–51. Foster also seeks punitive damages (Count IV). *See id.* ¶¶ 52–58. Royal Caribbean
believes that it's entitled to summary judgment on each of these four counts, *see generally* Def. MSJ,
while Foster, in turn, asks for summary judgement on the issue of Royal Caribbean's notice of the
allegedly dangerous condition, *see generally* Pl. MSJ.

## THE LAW

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in
navigable waters." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019). "Drawn from

state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 838 (11th Cir. 2010) (quoting *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65 (1986)). A cruise line "is not liable to passengers as an insurer," but is instead liable to passengers "only for its negligence." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (cleaned up). "The elements of a maritime negligence claim, in turn, are well-established, and stem from general principles of tort law." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). A cruise passenger must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Guevara*, 920 F.3d at 720 (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record." (quoting FED. R. CIV. P. 56 advisory committee's note)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex,* 477 U.S. at 323; *see also Lima v. Fla. Dep't of Child. & Fams.*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

ANALYSIS

## I.     The Defendant's Motion for Summary Judgment

In its MSJ, Royal Caribbean advances three arguments. *First*, it asks for summary judgment on all counts because "the alleged dangerous condition was open and obvious." Def. MSJ at 5. *Second*, it says that the Plaintiff's vicarious-liability claim cannot survive because Foster "has failed to establish negligence on the part of Defendant's employees." *Id.* at 9. *Third*, it maintains that "there is simply insufficient evidence to support a claim for punitive damages." *Id.* at 10. We'll address each argument in turn.

### a.   Open and Obvious

According to Royal Caribbean, "[c]ourts in this district have held that there is 'no duty to warn of a dangerously hot pool deck because that condition [is] open and obvious.'" *Id.* at 5 (quoting *O'Brien v. NCL (Bahamas) Ltd.*, 288 F. Supp. 3d 1302, 1312 (S.D. Fla. 2017) (Lenard, J.), *abrogated on other grounds by Tesoriero v. Carnival Corp.*, 965 F.3d 1170 (11th Cir. 2020)). In Royal Caribbean's view, "the ordinary use of one's senses in feeling the deck with one's bare feet would undisputedly lead to a finding that the nature [of the] alleged dangerous condition (a hot deck) was open and obvious." Def. MSJ at 6. Foster responds with three main arguments. *First*, he says that, even if the condition had been open and obvious, that alone wouldn't entitle Royal Caribbean to summary judgment on Foster's "duty to maintain claim." Pl. Response at 4. *Second*, he insists that Royal Caribbean has "mischaracterize[d] portions of the plaintiff's testimony to fit its argument." *Id.* at 5. Specifically, he points to parts of his deposition in which he said that he wasn't aware of the deck's "propensity to become *unreasonably* hot[.]" *Ibid. Third*, he argues that, even if he knew the deck was hot, there's a genuine issue of material fact as to whether "the deck's propensity to become unreasonably hot and cause severe burn injuries was open and obvious under the reasonable person standard." *Id.* at 6. After careful review, we side with Royal Caribbean.

6

"[U]nder maritime law, a carrier's duty of reasonable care includes a duty to warn passengers of dangers of which the carrier knows or should know, but which may not be apparent to a reasonable passenger." *Poole v. Carnival Corp.*, 2015 WL 1566415, at *5 (S.D. Fla. Apr. 8, 2015) (Cooke, J.); *see also Dudley v. NCL (Bahamas) Ltd.*, 688 F. Supp. 3d 1194, 1200 (S.D. Fla. 2023) (Bloom, J.) ("[C]ruise lines owe their passengers a duty to warn of known or foreseeable dangers." (cleaned up)). But the "operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020) (quoting *Guevara*, 920 F.3d at 720 n.5). "Open and obvious conditions are those that should be obvious by the ordinary use of one's senses. Whether a danger is open and obvious is determined from an objective, not subjective, point of view." *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345–46 (S.D. Fla. 2015) (Moore, C.J.) (cleaned up); *see also Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 908 (11th Cir. 2017) ("To determine whether a condition is open and obvious, this Court asks whether a reasonable person would have observed the condition and appreciated the nature of the condition."). The question, therefore, is whether a reasonable person in Foster's position would've appreciated the danger the hot deck posed.

As a preliminary matter, we tend to agree with Judge Lenard's general observation that a cruise operator has "no duty to warn of a dangerously hot pool deck because the condition [is] open and obvious." *O'Brien*, 288 F. Supp. at 1312. And that's because it would be obvious to a reasonable passenger, "by the ordinary use of one's senses," *Lugo*, 154 F. Supp. at 1346, that an "extraordinarily hot" pool deck might tend to burn one's feet, Foster Depo. at 97:20.

But we don't need to rely on broad generalizations about pool decks in this case because it's undisputed that Foster was in physical contact with the deck for over a minute, that he knew that it was very hot, and that he continued to perform *for three separate judges* anyway because he wanted to win the "World's Sexiest Man" competition. *See* Foster Depo. at 66:1–6 ("Q: And while you were touching the deck with your hands, did you -- did you notice the temperature of the deck? A. Yes. Q.

Okay. What did you notice about it? A. I noticed that it was hot."); *id.* at 67:17–25 ("Q: Okay. And at any point while you were performing for the second judge, did you notice, you know, that -- did you sense with your feet that the deck was hot? A. Yes. Q. Okay. And while you were performing for that second judge, was the heat -- was it uncomfortable? A. Yes."); *id.* at 70:11–19 ("Q: Okay. And then, you went to dance for the last judge, who was Lynn Camacho, right? A. Correct. Q. Okay. And we have video of that. Do you remember about how long you were dancing for her? A. I remember that that was the shortest of them because I had to leave the pool deck because it was so hot.").

We're generally loathe to grant summary-judgment motions filed by cruise-ship operators in maritime-tort cases. *See, e.g.*, *Terry v. Carnival Corp.*, 2025 WL 2958627 (S.D. Fla. Oct. 20, 2025) (Altman, J.) (denying Carnival's MSJ); *Diego v. MSC Cruises, S.A.*, 2024 WL 2880699 (S.D. Fla. June 6, 2024) (Altman, J.) (denying MSC's MSJ); *Hostert v. Carnival Corp.*, 2024 WL 68292 (S.D. Fla. Jan. 5, 2024) (Altman, J.) (denying Carnival's MSJ). That's not because we're biased against cruise-ship operators, by the way; it's because the arguments cruise-ship operators typically advance in those motions— whether they should have been more careful or provided additional warnings, etc.—are the kinds of fact-intensive, policy questions that are best left for juries. In the extreme circumstances of our case, however, we think it beyond peradventure that a reasonable person in Foster's position—using his ordinary perceptions of heat and pain—would have recognized that his prolonged exposure to a very hot pool deck could have burned his feet.

Against this self-evident proposition, Foster advances two arguments—both bordering on frivolity. *First*, he says that he was justified in continuing to perform in the competition—for one judge and then a second and finally a third—despite how hot he felt the floor to be because he was "on a Royal Caribbean ship," and *that* (he believed) was a "safe environment." Pl. Response at 5. But Foster's subjective belief is irrelevant. *See Lugo*, 154 F. Supp. at 1346 ("Whether a danger is open and obvious is determined from an objective, not subjective, point of view."). And that's because Foster's proposed

rule would create serious moral-hazard problems. While performing, Foster acknowledged that his feet felt very hot, but he ignored that sensation because he wanted to win the competition. Now, Foster is asking us to let him have his cake and eat it too. In Foster's world, he can win the competition (or try to) by performing to the end, *and then* he can sue the cruise ship to compensate him for his burns. But that's not how the law works. Once it became clear that the floor was hot, Foster had three options: (1) resign from the competition; (2) pause the competition and put on his sandals; or (3) continue with the competition and assume the risk of injury. But he wasn't entitled to continue the competition, assume the risk of injury, *and then* foist that risk back onto the cruise operator. The law generally tries to avoid windfalls.

*Second*, Foster urges us to *ignore* the parts of his testimony in which he conceded that, *while* he was performing, he could feel just how hot the deck was because "the plaintiff's subjective observations are irrelevant in determining whether a duty to warn existed." Pl. Response at 6 (quoting *Lugo*, 154 F. Supp. at 1346). [3] Here, Foster gets the law only partly right. It's true that "[w]hether a condition is open and obvious is not considered from the subjective standpoint of what the Plaintiff actually perceived[.]" *Bazan v. Carnival Corp.*, 2024 WL 3926291, at *8 (S.D. Fla. Aug. 8, 2024) (Sanchez, Mag. J.), *report and recommendation adopted sub nom. Bazan v. Carnival Cruise Lines*, 2024 WL 3916797 (S.D. Fla. Aug. 23, 2024) (Williams, J.) (cleaned up). But that doesn't mean we don't take the plaintiff's circumstances into account when deciding what a reasonable person in the plaintiff's position would

---

[3] Foster says that "[i]t would be an error to credit or draw inferences from Mr. Foster's testimony that favor the defendant's argument over other reasonable inferences and portions of Mr. Foster's testimony that favors [sic] the plaintiff/non-moving party at this stage in litigation." Pl. Response at 5 (citing *Carroll*, 955 F.3d at 1265). But we've drawn no inferences for the Defendant—and Foster points us to no portion of his testimony in which he claimed he *didn't* know the floor was hot. *See generally* Pl. Response. We've simply applied *Foster's own testimony* to the well-settled law that governs the "open and obvious" standard. If Foster had it his way, we'd be forced to ignore the facts that discredit his claim—even when those facts are *undisputed*. If we were to do that, though, no one would *ever* be entitled to summary judgment—and that obviously isn't the law.

have understood. On the contrary, the law *requires* us to assess the openness and obviousness of the danger "from the standpoint of an objectively reasonable person *under the circumstances.*" *Ibid.* (emphasis added). The question here, then, is whether a reasonable person in the same circumstances—who'd been dancing barefoot on the deck for one judge and then a second and finally a third, *all* while feeling just how uncomfortably hot the deck was—would've appreciated the risk of being burned.[4] We think it beyond cavil that a reasonable person in Foster's "shoes" would have understood that dancing on a scalding deck for more than a minute carried significant risks.

Foster tries to escape this common-sense-conclusion by analogizing his case to *Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x. 949, 952 (11th Cir. 2016). But that case is very different from ours. In *Frasca*, the Eleventh Circuit found that the slipperiness of a cruise ship's deck wasn't open and obvious because "a reasonable person would have known that the deck would be slippery"—based on undisputed evidence that the deck was visibly wet and blanketed in heavy fog—"but not as slippery as it actually was." 654 F. App'x at 952. "A jury," the *Frasca* Court held, "could credit the expert's testimony and conclude that the deck's visible wetness and the weather conditions would not alert *a reasonable observer* to the extent of the deck's slipperiness." *Ibid.* (emphasis added)). But that's because, before he slipped, the *Frasca* Plaintiff hadn't yet *walked* on the slippery floor. He had only *seen* the wetness on the floor *before* he stepped on it. In our case, by contrast, Foster didn't just stand in the shade, see that the sun had been shining on the floor, and then (not recognizing how hot the sun had made the floor) step onto the floor and suffer burns. He, instead, got on his hands and knees and then continued to perform on a scalding-hot floor for well over a minute—passing from one judge to the

---

[4] Courts routinely consider a plaintiff's *actual* knowledge of a risk-creating condition when evaluating whether the condition would've been open and obvious to a reasonable person in the plaintiff's position. *See, e.g.*, *Lugo*, 154 F. Supp. at 1346 ("Plaintiff also used the bunk bed ladder to ascend into bed without incident." (cleaned up)); *Bazan*, 2024 WL 3926291, at *8 ("[T]he flared structure of the staircase with its curved base was visible and apparent, and the Plaintiff actually saw the staircase and walked around its flared based when she approached the ballot box on the stage.").

next—despite how hot he indisputably *felt* the floor to be. To be analogous to our case, then, the *Frasca* Plaintiff would've had to do more than merely *see* the wet floor—he would've had to step onto the floor and slip one time, two times, maybe even three times, *each time* getting back up and walking again until finally he slips in a way that causes serious injuries. But, of course, if those had been the facts, *Frasca* would have come out the other way—just as we do.

Because the danger the hot pool deck presented was open and obvious, we **GRANT** this part of Royal Caribbean's MSJ. Still, we agree with Foster that this ruling *doesn't* affect the viability of the negligent-failure-to-maintain claim he advances in Count III. *See Carroll*, 955 F.3d at 1269 ("[T]he open and obvious nature of a dangerous condition does not bar a claim against a shipowner for negligent failure to maintain safe premises."). Royal Caribbean hasn't explained why a finding that the hazard was open and obvious would vitiate its duty to maintain a safe premises. It's simply argued, in conclusory summation, that "summary judgment should be entered in RCCL's favor on all counts." Def. MSJ at 5; *see also* Def. Reply at 5 ("With these facts and the authority in *O'Brien*, summary judgment should be entered in RCCL's favor on all counts."). That's not sufficient to justify summary judgment. We therefore **GRANT** Royal Caribbean's request for summary judgment on Count II and **DENY** its request for summary judgment on Count III.

### b.  Vicarious Liability

Royal Caribbean argues that "[t]here is no evidence any crewmember was negligent that can then be imputed to [Royal Caribbean] under a theory of vicarious liability." Def. MSJ at 7. In his Response, Foster "concedes the record evidence does not support the count on vicarious liability in this case as the defendant's employees were specifically not trained nor educated on the subject deck's dangerous heat propensity prior to Mr. Foster's burn injuries." Pl. Response at 7. We therefore **GRANT** Royal Caribbean's MSJ as to Count I.

### c.  Punitive Damages

Finally, Royal Caribbean contends that Foster hasn't shown the kind of "intentional misconduct" that would justify a claim for punitive damages. Def. MSJ at 10. Foster responds that Royal Caribbean "has made the intentional business decision to refrain from warning its passengers that its decks can reach scalding temperatures hot enough to cause at least second-degree burns" and "has also made the intentional choice year after year to do absolutely nothing to mitigate the heat on the decks of its ships, warn passengers of the dangerous heat propensity, nor require its employees monitor the heat of the deck[.]" Pl. Response at 8. But that's not enough to trigger a claim for punitive damages.

The Supreme Court has said that "the common-law tradition of punitive damages extends to maritime claims." *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 414 (2009). Since then, the Eleventh Circuit has "made clear" that "punitive damages are precluded in maritime personal injury claims except in exceptional circumstances[.]" *Incardone v. Royal Caribbean Cruises, Ltd.*, 2020 WL 2950684, at *6 (S.D. Fla. Jan. 18, 2020) (Martinez, J.); *see also Petersen v. NCL (Bahamas) Ltd.*, 748 F. App'x 246, 251–52 (11th Cir. 2018) (holding that "[n]othing in [*Atlantic Sounding*] undermines our [prior] holding in *In re Amtrak* . . . . that punitive or loss of consortium damages may be available under federal maritime law [only] 'in exceptional circumstances such as willful failure to furnish maintenance and cure to a seaman'" (quoting *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997)).

In evaluating whether a maritime personal-injury plaintiff can recover punitive damages, judges in our District have applied some different standards. *Compare Lobegeiger v. Celebrity Cruises, Inc.*, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011) (Altonaga, J.) ("[A] plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's *wanton, willful, or outrageous conduct*." (emphasis added)), *with Simmons v. Royal Caribbean Cruises, Ltd.*, 423 F. Supp. 3d 1350, 1353–54 (S.D. Fla. 2019) (Ungaro, J.) ("Plaintiff's

12

negligence allegations here simply do not rise to the level of *intentional misconduct* necessary for the Court to find that this is an exceptional circumstance in which punitive damages may be warranted." (cleaned up & emphasis added)). In recent years, though, our judges have tended towards the view that, to justify punitive-damages claims, plaintiffs must show intentional misconduct. *See Hall v. Carnival Corp.*, 536 F. Supp. 3d 1306, 1312 (S.D. Fla. 2021) (Bloom, J.) ("Upon review, the Court agrees that the standard applicable to punitive damages claims in a case involving injury to a passenger is intentional misconduct on the part of a defendant."); *see also D.S. v. Carnival Corp.*, 2025 WL 1295031, at *13 (S.D. Fla. Mar. 17, 2025) (Goodman, C. Mag. J.), *report and recommendation adopted*, 2025 WL 1295047 (S.D. Fla. Apr. 3, 2025) (Williams, J.) ("[T]he issue is whether Defendant's employees [sic] alleged conduct . . . meets the intentional misconduct standard for a punitive damages claim."). But we needn't resolve this split today because the parties agree that we should apply the "intentional misconduct" standard to determine whether Foster can pursue punitive damages in this case. *See* Def. MSJ at 10 ("In a maritime case such as this one, a plaintiff must demonstrate intentional misconduct in order to recover punitive damages." (cleaned up)); *see also* Pl. Response at 8 ("Punitive damages are available in maritime personal injury cases when intentional misconduct is shown." (citing *Tang v. NCL (Bahamas), Ltd.*, 472 F. Supp. 3d 1227, 1230–31 (S.D. Fla. 2020) (Moore, C. J.)). So that's the standard we'll apply here.

"In order to demonstrate intentional misconduct, a plaintiff must show that 'the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and despite that knowledge, intentionally pursued that course of conduct.'" *Hall*, 536 F. Supp. at 1313 (citing *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1329 (S.D. Fla. 2019) (Torres, Mag. J.)). Foster's claims don't meet this standard.

Foster hasn't introduced *any* evidence that Royal Caribbean "intentionally pursued" a course of conduct that caused him harm. *Ibid.* His only evidence is the testimony of the Defendant's corporate

representative to the effect that Royal Caribbean hadn't "made any changes to the deck or put out any warnings to passengers after each passenger disclosed in this lawsuit was burned[.]" Pl. Response at 8. But a cruise operator's failure to remedy or warn about a dangerous condition is "merely a traditional negligence claim" that doesn't entitle a plaintiff to punitive damages. *Roberts v. Carnival Corp.*, 2020 WL 10898036, at *4 (S.D. Fla. Oct. 19, 2020) (Moore, C.J.) ("Plaintiff's allegation that Defendant knew the defect was dangerous and failed to implement appropriate corrective measures is merely a traditional negligence claim, summarily alleged to have been done intentionally. . . . Because Plaintiff does not provide any factual allegations tending to show that Defendant's conduct was intentional, rather than merely negligent, Plaintiff's request for punitive damages must be stricken[.]"); *see also Smith v. Carnival Corp. & PLC*, 2023 WL 5224338, at *3 (S.D. Fla. Aug. 15, 2023) (Bloom, J.) (finding that punitive damages weren't available despite "nineteen prior incidents of passengers who slipped and fell in the same subject area"); *Kennedy*, 385 F. Supp. at 1329 (holding that intentionally promoting "the use of water inflatables without warning guests" of the potential danger associated with their use was a traditional negligence claim for which punitive damages were unavailable).

Foster hasn't shown that Royal Caribbean did the kinds of things we would typically associate with intentional conduct. *See Black's Law Dictionary* (12th ed. 2024) (defining "intentional" as "done with the aim of carrying out a given act"). Put another way, Foster hasn't introduced any evidence that Royal Caribbean acted *with the aim* of creating an extra hot deck—much less that it acted *with the aim* of burning his feet. He hasn't, for instance, introduced evidence that Royal Caribbean *intentionally* installed a deck that was more likely to burn its passengers or that a cruise-ship employee *told* Foster to remove his shoes because, in the cruise operator's estimation, Foster hopping painfully on a scalding floor would have made for a better show. On the contrary, Foster bases his claim *only* on Royal Caribbean's "intentional choice year after year *to do absolutely nothing*[.]" Pl. Response at 8 (emphasis added). That's just plain-old negligence. It may even be gross negligence. But it isn't intentional.

Because Foster has failed to show that Royal Caribbean's intentional misconduct caused his injuries, we **GRANT** Royal Caribbean's request for summary judgment on Count IV.

## II.      The Plaintiff's Motion for Partial Summary Judgment

In *his* MSJ, Foster "moves for summary judgment on the issue of notice based on evidence of substantially similar incidents." Pl. MSJ at 3. In support of his motion, Foster argues that "[t]here have been at least seventy prior incidents uncovered wherein passengers sustained burns to their feet on the deck of a Royal Caribbean or Celebrity cruise ship, on deck material that was the same or substantially similar to the Bolidt Future Teak decking on which Mr. Foster burned his feet." *Id.* at 1. In response, Royal Caribbean argues that *some* of these prior incidents (1) are too remote in time, (2) didn't involve Royal Caribbean ships, (3) didn't occur on Bolidt Future Teak decks, and (4) aren't substantially similar to Foster's incident. *See* Def. Response at 7–9.[5] Here, we agree with Foster.

Shipowners (like Royal Caribbean) "owe their passengers a duty of 'ordinary reasonable care under the circumstances.'" *Rondon v. Carnival Corp.*, 2025 WL 2551262, at *2 (S.D. Fla. Sept. 5, 2025) (Altman, J.) (quoting *Keefe*, 867 F.2d at 1322). "This standard requires, as a prerequisite to imposing liability, that the carrier have had actual *or* constructive notice of a risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure. . . . [A] cruise ship operator's liability hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720 (emphasis added & cleaned up). Actual notice "exists when the defendant knows about the dangerous condition[.]" *Newbauer v. Carnival Corp.*,

---

[5] Royal Caribbean also chides Foster for (what it claims is) Foster's failure to draft his PSMF in compliance with Local Rule 56.1(b)(1)(B) and his propensity for citing materials that aren't in the record. *See* Def. Response at 3–4. But we have "broad discretion in deciding how to best manage the cases before [us]," *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997), and we've chosen *not* to strike the PSMF because it contains pinpoint references to cited authorities in a way that complies with our Local Rules. Plus, we can grant Foster's MSJ *without* relying on any extra-record cites.

26 F.4th 931, 935 (11th Cir. 2022). Constructive notice, on the other hand, can be shown in multiple ways. *First*, the plaintiff can demonstrate "that a 'defective condition existed for a sufficient period of time to invite corrective measures.'" *Ibid.* (quoting *Keefe*, 867 F.2d at 1322). *Second*, "a plaintiff can establish constructive notice with evidence of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident." *Newbauer*, 26 F.4th at 935 (cleaned up).

Here, Foster relies on the second method of showing constructive notice—evidence of substantially similar incidents. *See* Pl. MSJ at 3 ("The plaintiff moves for summary judgment on the issue of notice based on evidence of substantially similar incidents.").  It's well established that "[t]he 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015).

Foster has established that Royal Caribbean had constructive notice, based on the significant number of prior incidents he's identified, that its Bolidt Future Teak decks can burn passengers' feet. Royal Caribbean *admits* that, in the five years before Foster burned his feet (2017−22), *at least 25 passengers* had reported burning their feet on Royal Caribbean's (or Celebrity's) Bolidt Future Teak decks. *See* Royal Caribbean's Supplemental Response to Initial Requests for Admission ("Suppl. Response 1") [ECF No. 64-3] ¶¶ 8, 12, 15, 17, 18, 19, 23, 24, 27, 28, 31, 33, 35, 37, 38, 44, 46, 49, 50, 53, 54;[6] Royal Caribbean's Second Supplemental Response to Initial Request for Admissions ("Suppl. Response 2) [ECF No. 64-4] ¶¶ 6, 16, 26, 40; *see also* Deposition of Royal Caribbean Corporate Representative Amanda Campos [ECF No. 64-5] at 23:2–13 (admitting to knowledge of several of

---

[6] Royal Caribbean's admissions are limited to reported burns involving decks made of Bolidt Future Teak—the same material on which Foster burned his feet. *See, e.g.*, Suppl. Response 1 ¶ 10 ("Pursuant to the Court's order of June 2, 2025, Defendant need only respond to prior incidents involving Bolidt Future Teak. This request falls outside of the scope of the Court's order and is therefore denied.").

these incidents); Royal Caribbean's Unverified Supplemental Answer to Interrogatory No. 24 [ECF No. 64-6] (identifying sixteen instances of passengers burning their feet on Royal Caribbean's hot pool decks). Given this evidence, we find (without difficulty) that Royal Caribbean had constructive notice that, when heated by the sun, its Bolidt Future Teak decks tended to burn passengers.

Royal Caribbean parries that some of these incidents (1) are too remote in time; (2) involve Celebrity, a technically separate corporate entity; (3) didn't happen on Bolidt Future Teak decks; and (4) aren't similar enough to Foster's case. *See generally* Def. Response. We disagree with all but the third argument. *First*, we're not sure why incidents going all the way back to 2017 would be too remote in time—especially when there's no dispute that this deck material continued to burn passengers all the way up through 2022. *See, e.g.*, Suppl. Response 1 ¶ 8 (admitting that a passenger "sustained 1st and 2nd degree burns to the bottom of her feet from standing barefoot on the pool deck of the Celebrity Equinox on May 30, 2022"). So, while the Eleventh Circuit *has* said that, "[u]nder the substantial similarity doctrine, such evidence is [only] admissible if: . . . the prior incidents are not too remote in time," *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988), we've previously found that incidents occurring "within the five years before [a plaintiff's] accident" *weren't* too remote in time, *Spotts v. Carnival Corp.*, 711 F. Supp. 3d 1360, 1367 (S.D. Fla. 2024) (Altman, J.). If anything, the fact that passengers have been reporting injuries related to the Bolidt Future Teak decks for several years only *bolsters* Foster's argument that Royal Caribbean had constructive notice of this potentially dangerous condition.

*Second*, we see no reason to exclude incidents from Celebrity's ships. Royal Caribbean's corporate representative testified that Celebrity and Royal Caribbean are "part of the same company," Campos Depo. at 6:14–25—and nothing in the record suggests that Royal Caribbean wasn't aware of burn incidents that occurred on Celebrity ships. In any event, the vast majority (at least 21) of these incidents—the ones involving the Bolidt Future Teak decks—occurred on Royal Caribbean (not

Celebrity) ships. And 21 incidents are more than enough to put Royal Caribbean on constructive notice.

*Third*, we agree with Royal Caribbean that we shouldn't be considering incidents that *didn't* involve Bolidt Future Teak decks—so we've excluded these from our analysis. Even so, we're still left with *25 similar incidents*—all occurring on Bolidt Future Teak decks—in the five years before Foster's injury. *See generally* Suppl. Resps. 1 & 2.

*Finally*, we reject Royal Caribbean's argument that some of the incidents aren't sufficiently similar to Foster's. *See* Def. Response at 8 ("[S]everal of the prior incidents involved individuals who reported that they burned their feet while walking. Another incident involved a man who had diabetic neuropathy affecting his feet at the time of his alleged incident. Another involved a woman who said she developed friction burns while participating in a Zumba class." (cleaned up)). As the Eleventh Circuit has said, "[t]he 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels* 796 F.3d at 1287. So, while there may be some superficial differences between Foster's incident and the others—Foster was performing while a woman was dancing, Foster was flexing while others were walking—we're satisfied that these incidents were more than sufficient to put Royal Caribbean on notice that its Bolidt Future Teak decks could burn barefoot passengers. All the incidents, after all, including Foster's, shared several critical elements: All the passengers were barefoot; all the passengers came into contact with hot Bolidt Future Teak decks on cruise ships operated either by Royal Caribbean or by its sister company, Celebrity; and all the passengers were burned by the heat radiating from those decks. *See generally* Suppl. Resps. 1 & 2. We, in short, find that Foster is entitled to summary judgment on the issue of constructive notice.

\* \* \*

Accordingly, we hereby **ORDER** and **ADJUDGE** as follows:

1. The Defendant's Motion for Summary Judgment [ECF No. 70] is **GRANTED in part** and **DENIED in part**.

   a. Summary judgment is **GRANTED** for Royal Caribbean on Counts I, II, and IV of the Complaint [ECF No. 1].

   b. Royal Caribbean's request for summary judgment on Count III is **DENIED**.

2. The Plaintiff's Motion for Partial Summary Judgment [ECF No. 65] is **GRANTED**.

3. The Clerk is directed to **REOPEN** this case and **LIFT** the stay.

4. The parties shall file a Joint Scheduling Report within **14 days** of this Order.

**DONE AND ORDERED** in the Southern District of Florida on November 20, 2025.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record